UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMARILYS R.[1],<br>    *Plaintiff*,<br><br>    v.<br><br>KILOLO KIJAKAZI, Comm'r of Soc. Sec.,[2]<br>    *Defendant*. | 3:20-CV-1348 (OAW) |

## ORDER AFFIRMING DECISION OF THE COMMISSIONER

Chronic pain is invidious, impacting everything from ability to affect. Assessing it often primarily relies on the assertions of the afflicted, and medication to treat it can cause side effects that might limit just as many activities (such as operating a motor vehicle or heavy machinery) as the onerous, distracting pain itself. Accordingly, the court took considerable time and care in familiarizing itself with the complete record in this matter toward arriving at a fair and legally sound resolution of the instant motion.

This matter is before the court upon Plaintiff's Motion to Reverse the Decision of the Commissioner[3] and its supporting memorandum ("Motion to Reverse"), *see* ECF Nos. 23 and 23-1, as well as Defendant's responsive Motion to Affirm the Decision of the Commissioner and its supporting memorandum ("Motion to Affirm"), *see* ECF Nos. 27 and 27-1 (together with the Motion to Reverse, "Motions"). The court has reviewed the

---

[1] Pursuant to this district's standing order (issued January 8, 2021) regarding social security cases (available at: https://www.ctd.uscourts.gov/sites/default/files/adminOrdersOCR/21-1_Standing%20Order%20Re%20Social%20Security%20Cases_6.pdf) (last visited Mar. 8, 2023), the court will identify Plaintiff as such (or by first name and last initial), "[t]o protect the privacy interests of social security litigants while maintaining public access to judicial records". *Melissa C. v. Kijakazi*, 2023 WL 154893 (RMS), at *19 (D. Conn. Jan. 11, 2023).

[2] The case caption in this action lists Andrew Saul as the defendant, but Kilolo Kijakazi has replaced him as Acting Commissioner of Social Security. ECF No. 27-1 at 1 n.1.

[3] All references to the "Commissioner" in this order shall refer to the Commissioner of Social Security.

Motions, the administrative record, *see* ECF No. 21, and the record in this matter and is thoroughly apprised in the premises. For the reasons discussed herein, the court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").

I.   **LEGAL PRINCIPALS**

The Commissioner employs a five-step analysis when determining whether an individual is entitled to disability insurance pursuant to the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the Commissioner evaluates whether the applicant is engaged in "substantial gainful activity," and if they are so engaged, the application is denied. *Id.* If they are not so engaged, then the Commissioner proceeds to step two and determines whether the applicant has a medically severe impairment or combination of impairments. *Id.* at 140–41. Without such impairment(s), the application is denied. *Id.* If the applicant's impairment is severe, then the Commissioner proceeds to the third step, at which the Commissioner consults a list of impairments that are presumptively disabling (the "Listings"), and if the applicant's impairment matches a condition on that list, their application is granted. *Id.* If the applicant's impairment is not in the Listings, then the analysis proceeds to the fourth step, at which the Commissioner determines whether the applicant's impairment or combination of impairments prevents them from performing work they have performed in the past. If not, then the application is denied. *Id.* If so, the Commissioner proceeds to the fifth and final step and determines whether there is any other work available in the national economy that the applicant could perform, given their impairment, age, education, and work experience. *Id.* at 142. If so, then the application is denied, and if not, then the application is granted. *Id.*

District courts may set aside a disability determination only if it is "based upon legal error or is not supported by substantial evidence." *Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence" means more than a scintilla of evidence, but it is a very deferential standard of review. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012). The standard is satisfied by "such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.;* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)) (emphasis in original); *see also Johnson v. Berryhill*, No. 3:17-CV-1651 (VAB), 2019 WL 1430242, at *5 (D. Conn. Mar. 29, 2019). In reviewing a disability determination, courts must examine the entire administrative record and "consider the evidence which fairly detracts from the administrative finding as well as that which supports it." *Covo v. Gardner*, 314 F. Supp. 894, 899 (S.D.N.Y. 1970); *see also Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir. 1999) ("To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.").

If the court finds that the Commissioner has applied an incorrect legal standard, or if there are significant gaps in the administrative record, the court may remand for further review by the Commissioner. *See Lepak ex rel. Lepak v. Barnhart*, 206 F. Supp. 2d 389, 392 (W.D.N.Y. 2002) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)). But if the record contains persuasive proof of disability, the court may reverse the Commissioner's decision and remand only for the calculation and payment of benefits. *Id.* Otherwise, the stringent burden, which is "even more [deferential] than the 'clearly erroneous' standard

[of review]" demands that the Commissioner's decision be affirmed.  *See Brault*, 683 F.3d at 448 (quoting *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

## II.     BACKGROUND

Plaintiff is a 47-year-old woman.  ECF No. 21 at 26.[4]  In April 2018, she applied for disability insurance pursuant to the Social Security Act,[5] asserting that she had been disabled since December 30, 2016, due to sleep apnea; major depressive disorder; hypertension, chronic back pain; irritable bowel syndrome; panic disorder; hip pain; varicose vein and ulcer of the thigh; neuropathy; and plantar fascial fybromiotis.  *Id.* at 208, 237–38.  Additionally, she is morbidly obese.  *Id.* at 24.  She last worked in 2014, asserting that she injured her back while lifting a car seat in which her daughter was resting; she reports having back problems since that incident.  *Id.* at 20.  Her application initially was denied in September 2018.  *Id.* at 15, 118.  Plaintiff sought reconsideration, which again led to a determination that she was not disabled.  *Id.* at 136.  Thereafter, she requested a hearing in front of an ALJ, *id.* at 155, which was held on August 5, 2019, *id.* at 15.  On September 5, 2019, the ALJ issued a written decision.  *Id.* at 27.

Favorable to Plaintiff's application, the ALJ found that Plaintiff was not engaged in "substantial gainful activity" at step one, that indeed she has a medically severe combination of impairments at step two (specifically, multilevel degenerative disc disease, arthropathy, morbid obesity, depression, and anxiety), and, at step four review, that she could not return to her previous work as a bus driver.  *Id.* at 17–27.

---

[4] Citations to the administrative record will refer to the record pagination (Social Security Transcripts), and not the pagination assigned by the electronic case filing system (CM/ECF).
[5] Plaintiff previously was denied disability benefits in December 2016.  ECF No. 21 at 102.

4

However, the ALJ also determined at step three that Plaintiff's impairments were not presumptively disabling under the Listings, and, at step five, that there was other work in the national economy that Plaintiff still could perform.  *Id.*  Accordingly, Plaintiff's application was denied.  *Id.*  The Appeals Council denied Plaintiff's subsequent request for review.  *Id.* at 1.  As such, she now appeals this denial of benefits, asking the court to reverse the ALJ's decision or, in the alternative, to remand this matter for further review.

## III.     DISCUSSION

Plaintiff argues that the ALJ committed legal error at step three by failing to consider her spinal condition under the Listings.  She also argues that the ALJ made several findings of fact that are not supported by substantial evidence, such that the determination of her Residual Functional Capacity ("RFC")[6] was faulty.  Finally, she claims that, had her RFC been properly determined, the ALJ would have found that there is no job in the national economy that Plaintiff can perform.

Defendant responds that the ALJ's determination at step three was appropriate, since Plaintiff's argument relies upon revisions to the Listings that were not in effect at the time of Plaintiff's hearing.  And with respect to Plaintiff's RFC, Defendant responds that the ALJ properly considered all relevant evidence and that substantial evidence supports the ALJ's conclusions.

---

[6] The RFC is a multi-factor designation used in disability proceedings that indicates what capabilities and limitations a particular individual has.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010).  The RFC is used to determine what, if any, jobs in the national economy an applicant could perform. *Id.*

### A. Listings

Plaintiff asserts that the ALJ discussed her *mental* impairments at step three but failed to analyze her spinal condition under Listing 1.15.  That listing includes "[d]isorders of the skeletal spine resulting in compromise of a nerve root(s)" among those conditions which automatically qualify as disabling. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  However, courts "apply the version of the social security regulations and rulings in effect at the time of the ALJ's decision." *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 555 (2d Cir. 2020).  Even Plaintiff concedes that Listing 1.15 was not in effect when the ALJ issued its decision on September 5, 2019.  ECF No. 23-1 at 8 (stating that Listing 1.15 was codified in the Federal Register on December 3, 2020, and is relevant for all evaluations pending as of April 2, 2021).  Therefore, the court cannot consider whether Plaintiff would have qualified for benefits under that Listing, and so Plaintiff's first argument is unavailing.

Still, because the ALJ focused only on Plaintiff's *mental* impairments at step three, *see* ECF No. 21 at 18–19, one might be inclined to believe that the ALJ must have discredited Plaintiff's spinal condition entirely, but it would defy logic to arrive at that conclusion when at step two, the ALJ classified Plaintiff's multilevel degenerative disc disease among her severe impairments that "significantly limit [her] ability to perform basic work activities." *Id.* at 18.  While Plaintiff erroneously suggests that the ALJ should have considered Listing 1.15, this court finds that the ALJ could have analyzed Listing 1.04 (spinal disorders, generally).  *See* 20 C.F.R. Pt. 404, Subpt. P., app. 1, § 1.04 (disorders of the spine).

To be clear, this court does not go so far as to suggest that an ALJ must articulate the inapplicability of every single Listing (even those not asserted by a claimant), but the

failure of the ALJ decision to conduct the type of analysis as to Listing 1.04 that was performed by Defendant on pages four through six of his memorandum is the type of omission that reasonably might cause a claimant to feel as though her disability application was not properly assessed.

Nevertheless, as to this case, Defendant's factual and legal assessment of Listing 1.04 prevents its remand, *cf. Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), by persuasively arguing to this court that any ALJ error at step three was harmless, particularly in light of Defendant's argument that Plaintiff failed to present any argument at all that she satisfied the Listing 1.04 criteria. *See* ECF No. 27-1 at 6. *See also Otts v. Comm'r of Soc. Sec.*, 249 Fed.Appx. 887, 888–89 (2d Cir. 2007) (summary order) (affirming an ALJ determination that a spinal injury qualified as a disability but fell short of constituting a "listed impairment").

Also, the ALJ's analysis did not end there; it considered Plaintiff's back condition in determining her RFC and then proceeded to the assessment of steps four and five.

### B. Residual Functional Capacity

Plaintiff asserts that the ALJ's determination regarding Plaintiff's RFC was not based on substantial evidence, and instead was the result of ALJ error. She argues that: (1) the extent of her pain was underestimated; (2) she does not physically assist her mother; (3) she cannot exercise; (4) her baseline of chronic pain was miscalculated; and (5) medical evidence in this case was disregarded without explanation by the ALJ. The court will address each assertion seriatim.

7

### *1. Plaintiff's reported pain*

Plaintiff claims that the ALJ made findings as to the claimant's alleged pain and abilities that were inconsistent with Plaintiff's medical records.  ECF No. 23-1 at 11–12. Specifically, she notes that her occasional ability to perform activities of daily living ("ADL") only came with rest and breaks, and even then, sometimes resulted in injury.  *Id.* at 12.  However, Plaintiff fails to explain with persuasiveness how her abilities render her unable to perform the "simple, routine tasks" that the ALJ found her capable of performing within a sedentary environment.  *See* ECF No. 26 at 19; ECF No. 23-1 at 11–19.

An assessment of Plaintiff's pain largely requires examination of her self-reported condition, even insofar as she highlights that at times she has "requested additional medication to help her get through chores."  *See* ECF No. 23-1 at 12.  And the credibility of a claimant's allegations relative to pain is a matter within the ambit of an ALJ's review. *See Selian v. Astrue*, 708 F.3d 409, 421–22 (2d Cir. 2013) (finding no error in ALJ's determination that the plaintiff was not credible regarding self-reported pain, such that he was not deprived of a meaningful employment opportunity).   So, to an extent, the ALJ in the present case was assessing the credibility of the claimant (who testified in person at a hearing before the ALJ) in weighing "the claimant's statements concerning the intensity, persistence and limiting effects of [her self-reported] symptoms" juxtaposed against her medical records.  *See* ECF No. 21 at 21–22.

The defense argues that the ALJ properly considered all relevant evidence and that substantial evidence supports the ALJ's conclusions.  For example, medical records from Yale-New Haven Health noted a history of Plaintiff's neck and back pain but through imaging found that there were "[n]o disc bulges . . . or nerve root compression."  ECF No.

21 at 799–800. It remains true, as noted by the Comprehensive Pain Clinic, that Plaintiff had been prescribed numerous forms of strong and potentially addictive pain medication, *id.* at 412, but she also was responsive to certain therapies and procedures that occasionally relieved much of her pain and that increased her mobility and tolerance for activities of daily living, *id.* at 416–19. She expressed an ability to ascend a flight of stairs. *Id.* at 431. She ambulated independently, showed considerable strength, and exhibited an ability to balance. *See* ECF No. 27-1 at 7–16 (citing, *inter alia*, ECF No. 21 at 19-25, 413-16, 475-76, 552, 556). Defendant offers robust reference to the record in support of the RFC established by the ALJ. *Id.* Again, in arriving at such determinations, the ALJ considered a record complete with medical assessments as to Plaintiff's mobility, gait, strength, and psychological health. *Id.*; ECF No. 21 at 19–25. It also bears reiterating that the ALJ weighed the somewhat objective medical observations as to Plaintiff's range of motion and strength against Plaintiff's more subjective reports of experienced pain. The court finds insufficient cause to disturb the ALJ's findings.

### 2. *Extent of Plaintiff's role in assisting her mother*

The ALJ found Plaintiff to lack credibility in claiming that she was taking a limited, inactive role in caring for her mother (who was diagnosed with dementia). ECF No. 21 at 24. Plaintiff explains that her mother is in Connecticut's Medicaid program designed to house people who otherwise would have to reside in a nursing home, and that the ALJ had no reason to doubt her, as her mother has a CNA "for assistance with things like laundry." ECF No. 23-1 at 13–14. In explaining its doubts, the ALJ cited numerous times that the record referenced the claimant helping to care for her mother, and testimony that the ALJ found indicative of such active care. ECF No. 21 at 24. Still, the court

acknowledges the possibility that people in Plaintiff's position might find themselves unable to afford proper care for a loved one (such as for Plaintiff's mother and daughter), and consequently might extend themselves to (or beyond) their physical limitations. *See Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) (finding, in assessing the district court's determination that a three-year gap in medical treatment suggested a lack of disability, that "[i]t would fly in the face of the plain purposes of the Social Security Act to deny [the] claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful."). Without additional evidence, the court hesitates to question the motives and credibility of someone claiming simply to house a needy relative, for the court wishes to avoid creating a disincentive for individuals to provide available shelter out of fear that, to their detriment, they might be accused of doing (and of being capable of doing) more than just providing such relative with a home. Nevertheless, the applicable burden of proof affords great deference to the ALJ as to factfinding, and with the ALJ's offered support from the record, that burden proves too high to justify reversing or remanding this portion of the ALJ's ruling.

### 3. Inability to exercise

Plaintiff presented with severe morbid obesity and related medical complications, ECF No. 21 at 308, which she cites, together with her back pain, as both an impediment to exercise and as a source of pain minimized by the ALJ, *see* ECF No. 23-1 at 14. Plaintiff suggests that the ALJ cited her limited, occasional ability to exercise in underappreciating her chronic pain. *Id.* However, the ALJ took into account "'[t]he claimant's weight, including [its] impact on her ability to ambulate as well as [on] her other body systems. . . ." ECF No. 21 at 24. Tragically, these problems are interrelated.

Plaintiff's weight and related infirmities make it difficult to exercise, which in turn might make it difficult for her to lose weight.

Plaintiff's doctor lists poor nutrition (excess calories) as the original cause of her obesity. ECF No. 21 at 337. Initially, Plaintiff lost weight following sleeve gastrectomy (bariatric surgery), but she expressed frustration that her back pain did not subside, *id.* at 308–37, and stress eventually resulted in a dietary relapse, *id.* at 334.

The ALJ acknowledged the impact obesity had on the claimant and her abilities. *Id.* at 24. Plaintiff believes that her back pain prevents her from exercising, which she blames for her "failed bariatric surgery." ECF No. 23-1 at 14. And while the claimant suggests that her chronic pain is aggravated by "everything" and alleviated by lying down, the ALJ noted the medical records (including mental health, pain management, and other related documentation) supporting her conclusion that Plaintiff's RFC renders her fit to perform simple, routine work in a sedentary setting with limited standing or walking. ECF No. 21 at 19–25. This articulation survives requests to remand or to reverse the ruling.

### 4. Establishing Plaintiff's baseline of experienced pain

Over time, a multidisciplinary and sometimes coordinated approach to address Plaintiff's complicated and chronic pain has resulted in her increased strength, ability, and overall comfort, *see, e.g.,* ECF No. 23-1 at 15–16, but generally, the claimant reports having "more bad days than good," *id.* at 16. In seeking reversal, she accuses the ALJ of improperly highlighting her momentary relief from the worst of her pain rather than fully appreciating its constant hold over her, and of selectively referencing portions of the record that she thinks unfairly portray her as capable of work. *Id.* She asks the court to remand this matter so that the ALJ can reevaluate the record. *Id.* at 17.

The court finds that the ALJ performed a thorough review of the available record and fully articulated the reasons for the findings made and for the conclusions drawn. Much of the evidence cited by Plaintiff in support for her attestations of pain rely almost solely upon her own word as to what she was experiencing. Plaintiff asks the court to remand this case for the ALJ to further evaluate the record, but it seems that Plaintiff simply disagrees with the conclusions drawn by the ALJ after already having considered such evidence. The applicable legal standard is not whether this court agrees with the ALJ's findings, but whether "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations omitted). This extraordinarily high burden is a standard of review that is even more deferential than the "clearly erroneous" metric, *id.* (citing *Dickinson v. Zurko*, 527 U.S. 150 (1999)), and Plaintiff repeatedly fails to meet this great burden in challenging the ALJ's factual findings.

### 5. *Alleged contradiction (without articulation) of medical evidence*

Plaintiff accuses the ALJ of "rejecting medical opinions that conflict with the [ALJ's] ultimate RFC determination." ECF No. 23-1 at 17. Specifically, Plaintiff asserts that the ALJ's ruling contradicts medical evidence that she: (a) should be able to work in isolation; and (b) should be given great latitude in terms of where and when she must work.

#### a) *Isolated work*

Plaintiff claims that her interaction with the public and with colleagues should be limited in both time and subject matter, as supported by medical evidence in the record. *Id.* at 17–18. She cites a 2017 psychiatric evaluation report that references her personal, legal, financial, and interpersonal stressors, as well as her prior history of legal problems,

12

though she denied that there were any legal issues occurring at that time (except for a neighbor altercation of some sort).  ECF No. 21 at 1910.  Then, within her motion that accuses the ALJ of selective attention to the record, Plaintiff jumps ahead two years to records from 2019 in order to highlight her self-reported history of irritability, anger, and violent, assaultive behavior, admitting that she "once broke her husband's elbow"[7] at some unspecified point in time.  ECF 23-1 at 18.  Plaintiff's reference to a medical report that in turn cites her own self-reported history relies on her own credibility as a historian, and it also skips over two years of data that sometimes paints a different picture for the ALJ (and now for this court) to consider.

Physically, there were times that she appeared to ambulate well but self-reported severe back pain.  *See* ECF No. 21 at 1910 (finding, on June 28, 2017, that Plaintiff "presents with a steady gait but reports severe pain related to severe back problems."). Two months later, on September 7, 2017, a report noted, "The patient reports functioning as not difficult at all."  *Id.* at 1949. It described Plaintiff as exhibiting average cognition and as ambulating "with a steady gait" despite her noted obesity.  *Id.* at 1951.

On April 13, 2018, Plaintiff sought an increase in medication due to self-reported stressors, and she also asked for a printout of her diagnoses and medications to provide to the Social Security Administration.[8]  *Id.* at 1998.  Her medication plan appeared to be controlling her symptoms well, as of her appointment on June 8, 2018.  *Id.* at 2004.  The same was true in July of 2018.  *Id.* at 2017.  Her August visit noted that she was "trying

---

[7] As an aside, the court notes that Plaintiff's singular, self-reported claim of domestic violence (devoid of any context or timeframe) should not preclude her from being permitted to work any more than should her self-reported dated use of crack cocaine, *see* ECF No. 21 at 1871, 1907, even while at times she has been prescribed strong, highly-addictive pain medication, *see, e.g., id.* at 416, 579, 1757.
[8] The court acknowledges that Plaintiff also apparently asked for a letter predicting the impact to her mental health of any possible spousal deportation.  ECF No. 21 at 1998.

13

to obtain disability," but that she reported being "at baseline" with a positive impact from her medication.  *Id.* at 2026.  In 2017 and 2018, she also had multiple visits with her provider for medication management without psychotherapy.  *See id.* at 1914–2042.

On April 28, 2019, Plaintiff returned for psychiatric treatment for the first such session in five months.  *Id.* at 1871.  At that time, she was "currently not taking any psychiatric medications" and "related well" but self-reported irritability, paranoid thoughts, low energy, a lack of motivation, frequent crying, impulsive spending, insomnia, nervousness, and mood swings, while denying isolation and withdrawal, *id.* at 1872, though she seeks a finding that she must be permitted to work in isolation.

In June of 2019, "her irritability was now under control" with medication.  *Id.* at 1889.  Still, she described herself as "very angry", *id.* at 1894, and she complained of feeling overwhelmed and also of back pain and nervousness, *id.* at 1889.  The next month, she presented as "calm, pleasant and productive but reported that she [was] still too irritable and [that she was] having conflicts with her husband."  *Id.* at 1901.

Plaintiff bears the burden of proof, and, after reviewing over two thousand pages of social security transcripts in this case, the court cannot find that the ALJ determinations (particularly as to facts found) require either reversal or remand on Plaintiff's claim that she should have been found capable only of work that involves "limited social interaction", ECF No. 23-1 at 17.

### b)  *Particularly flexible positioning and work time*

Plaintiff asserts that there is medical evidence to support her claim that any prospective workplace should be flexible in accommodating her self-reported inability to sit or to stand for extended periods.  *See* ECF No. 23-1 at 18; ECF No. 21 at 479.

Notwithstanding such flexibility, she reports needing breaks from sitting, not just to change positions by standing, but for "periods of rest from even sitting down!" ECF No. 23-1 at 18.  To be clear, it appears that Plaintiff claims to require multiple breaks from work altogether when transitioning from one position to the next.  She also reports needing to lie down in order to alleviate her back pain.  *Id.*  Further, Plaintiff reminds the court that she is heavily medicated in that doctors have prescribed her "a large amount of narcotic pain killers."  *Id.*  Even then, Plaintiff warns in a subheading that her pain and fatigue should be accommodated not only with periods of rest, but with "off-task behavior" (a term that is not described at all) and with absenteeism, altogether.  *Id.*  Given the record of evidence in this case, the court takes this to mean that Plaintiff seeks work that will allow for not only great flexibility in how and when she works, but also as to whether she decides on short notice that she is unable to work at all.[9]

Finally, Plaintiff points out that "[a]t her hearing, she stood with a cane."  *Id*.  However, here (and as to certain other claims) the ALJ concluded that the record did not support Plaintiff's degree of alleged discomfort.  ECF No. 21 at 22.  While a claimant need not be an invalid in order to be deemed disabled, *see Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), this court finds that the ALJ presiding over Plaintiff's hearing was in the best position to judge Plaintiff's credibility, and was not bound to accept her claims.  Here, again, Plaintiff is unable to meet her high burden in justifying reversal or remand.

---

[9] The ALJ explained for example that in times of stated depression and anxiety, Plaintiff "does not like to leave the house" and "will cancel any doctor's appointments on those days."  ECF No. 21 at 21.

15

## IV. CONCLUSION

In the instant motion, Plaintiff accuses the ALJ of failing to consider the claimant's back pain, of minimizing the extent of her impairments, and of selectively relying on certain medical evidence (at the inappropriate exclusion of other such evidence), resulting in an improper Residual Functional Capacity determination, and thus unjustly arriving at the jobs Plaintiff can perform.

Ultimately, much of the ALJ's ruling relied on the fact-driven assessment of Plaintiff's self-reported pain, making this less a case of overlooked evidence than a matter involving record-based factual determinations.  Upon careful review, the court finds that the ALJ had an adequate record upon which to base its findings, and that Plaintiff has not met her extraordinarily high burden of convincing this court that either remand or reversal is warranted in this case.

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion to Reverse the Decision of the Commissioner (ECF No. 23) is **DENIED;**
2. The Motion to Affirm the Decision of the Commissioner (ECF No. 27) is **GRANTED;** and
3. The court respectfully requests that the Clerk of Court enter judgment in Defendant's favor and **CLOSE** this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 10th day of March, 2023.

_/s/_
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE